UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joseph Sorrentino and LaBron C. Neal, on their own behalf and on behalf of all similarly situated people,<br><br>Plaintiffs,<br><br>v.<br><br>Salvador A. Godinez, Director of the Illinois Department of Corrections,<br><br>Defendant. | ) | No. 12 C 6757<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joseph Sorrentino and LaBron C. Neal bring this class action lawsuit against defendant Salvador A. Godinez, Director of the Illinois Department of Corrections, alleging that prison employees confiscated several items of personal property from their cells in violation of their constitutional rights. Plaintiffs assert claims under the Takings Clause (Count I) and the Contracts Clause (Count II) of the United States Constitution, as well as a state law claim for breach of contract (Count III). R. 1 ¶¶ 29, 38, 46. Director Godinez has moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6). R. 12. For the following reasons, Director Godinez's motion to dismiss is granted.

## Background

The following facts, drawn from plaintiffs' complaint, are accepted as true, and all reasonable inferences are drawn in their favor. *Gomez v. Randle*, 680 F.3d

859, 864 (7th Cir. 2012). In evaluating a motion to dismiss, the Court considers "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also consider elaborations made by plaintiffs in opposing the motion to dismiss, so long as those elaborations are consistent with the facts alleged in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Plaintiffs are two individuals incarcerated at the Stateville Correctional Center ("Stateville") in Joliet, Illinois. R. 1 ¶¶ 11, 16. Over the course of several months, plaintiffs purchased several items from the prison commissary that are now at the center of this dispute. Specifically, on November 29, 2011, plaintiff Sorrentino purchased a typewriter from the commissary for $266.16. *Id.* ¶ 12. Plaintiffs also purchased two fans from the commissary for $26 each. *Id.* ¶¶ 14, 17. Sorrentino purchased his fan on March 27, 2012, and plaintiff Neal purchased his fan "sometime prior to July 2012."[1] *Id.* Each of these items had been approved for prisoner use by the Department, and plaintiffs were permitted to keep these items in their cells if they agreed to abide by the rules and policies regarding personal property. *Id.* ¶¶ 2, 4, Exh, 4, Exh. 5.

Plaintiffs contend that they derived significant benefits from having these items in their cells. For example, Sorrentino regularly used his typewriter to communicate with the outside world, and due to his limited access to the prison's

---

[1] As demonstrated by Neal's Personal Property Contract, however, Neal had possession of this fan on May 25, 2011, more than one year earlier. R. 1, Exh. 5.

law library, he also used it to prepare pleadings for court. R. 30 at 6. Plaintiffs' fans apparently provided even greater benefits. According to the complaint, Stateville is "poorly ventilated, and generally hold[s] two men in spaces designed for one." R. 1 ¶ 1. During the summer, when the outside temperature rises above the mid-90s, "temperatures inside cells on upper tiers at Stateville . . . can reach 120 degrees and more." *Id.* According to plaintiffs, "[p]risoners have died from this heat." *Id.* By using fans in their prison cells, however, plaintiffs are able to combat this "deadly heat." *Id.* ¶ 2.

In anticipation of the heat that was predicted to occur during the summer of 2012, inmates at Stateville were told that they could buy extra fans to use in their cells. *Id.* Additionally, on June 1, 2012, Marcus Hardy, the Warden at Stateville, issued Warden's Bulletin #2012-37, which provided that "offenders will be able to purchase a fan regardless of grade or shipping status . . . not to exceed the current authorized amount of fans owned by one offender."[2] *Id.*, Exh. 1.

In the middle of July 2012, however, "the Department reversed course" and decided to remove all "extra" fans from its prison cells. *Id.* ¶¶ 3-4. Specifically, on July 17, 2012, Warden Hardy issued Warden's Bulletin #2012-54, which provided that "offenders are allowed possession of one (1) fan per offender in each assigned cell" and that "all additional fans [would] be collected and inspected . . . [and] transported to and stored in offender personal property." *Id.*, Exh. 2. Pursuant to

[2] Plaintiffs have attached Warden's Bulletin #2012-37 to their complaint. R. 1, Exh. 1. The Court notes, however, that this bulletin could not have affected plaintiffs' decision to purchase their fans, because they had both purchased their fans prior to June 1, 2012.

this directive, plaintiffs' fans were removed from their cells. *Id.* ¶¶ 15, 18. Plaintiffs maintain that they "were not compensated for the costs [of the fans], and no other means for cooling the cells was provided." *Id.* ¶ 3.

A few days later, on July 23, 2012, Warden Hardy issued Warden's Bulletin #2012-51, which directed the removal of all typewriters from prisoners' cells. *Id.*, Exh. 3. Prisoners were given several options for disposing of their typewriters, including (1) giving the typewriter to a visitor; (2) mailing it to another person at the prison's expense; (3) donating it to the law library; (4) destroying it; or (5) storing it in their personal property. *Id.* Sorrentino's typewriter was subsequently removed from his cell, and he elected to donate it to the law library. R. 30 at 4. Sorrentino maintains that his typewriter was confiscated without just compensation. R. 1 ¶ 5.

In this federal action, plaintiffs seek a judgment declaring that their personal items were confiscated in violation of the United States Constitution, entitling them to either just compensation or return of their property. *Id.* ¶ 54. Plaintiffs have brought suit against Director Godinez based on his responsibility "for the day-to-day operations of the Department." *Id.* ¶ 19. Plaintiffs assert claims under the Takings Clause (Count I) and the Contracts Clause (Count II) of the United States Constitution, as well as a state law claim for breach of contract (Count III). *Id.* ¶¶ 29, 38, 46.

## Legal Standard

Director Godinez has moved to dismiss Count III of the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, and Counts I and II under Rule 12(b)(6) for failure to state a claim. Plaintiffs have since voluntarily withdrawn Count III to the extent that it seeks money damages. Accordingly, the Court focuses its attention on Director Godinez's challenges under Rule 12(b)(6).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.*, *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide the defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In

applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Id.*

## Analysis

Director Godinez grounds his motion to dismiss on two bases. First, he contends that he lacks the capacity to be sued, both in his individual and official capacities, based on the allegations of the complaint. Second, even if he were capable of being sued, Director Godinez maintains that plaintiffs have failed to state a claim upon which relief can be granted. The Court will address each argument in turn.

### I. Director Godinez's Capacity to Be Sued

#### A. Individual Capacity

Director Godinez argues that he cannot be sued in his individual capacity because plaintiffs have not alleged enough facts to demonstrate that he is "personally responsible" for the decision to remove their personal items from their cells. The Court agrees.

A defendant is not individually liable for a constitutional deprivation unless he is "personally responsible" for that deprivation. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982); *see also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (explaining that the doctrine of respondeat superior does not apply). In each case, the complaint must allege enough facts to show the defendant's "personal involvement." *Crowder*, 687 F.2d at 1005. A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the

constitutional violation, or if it occurred with his knowledge or consent." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). This rule recognizes that the defendant is not required to participate directly in the deprivation. *Sanville*, 266 F.3d at 740. Thus, supervisors may be liable for "deliberate, reckless indifference" to the misconduct of their subordinates if the supervisors "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Chavez*, 251 F.3d at 651.

In *Crowder*, the Seventh Circuit dismissed allegations against the Commissioner of Corrections of the State of Indiana, finding that his general familiarity with prison conditions did not suggest any actual knowledge of the terms of the plaintiff's confinement. 687 F.2d at 1005-06. The prison's assistant warden and its classifications director, however, were held liable, because they were directly responsible for refusing plaintiff legal help and were personally accountable for keeping plaintiff in a specialized seclusion unit. *Id.* at 1006.

Similarly, in *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981), the Seventh Circuit upheld a complaint of inadequate medical treatment against a prison hospital administrator, stating that his "position . . . justifies the inference at this state of the proceeding that he does bear some responsibility for the alleged misconduct." But the court dismissed the warden from the case because of his greater distance from the situation. *Id.* at 656. "It is doubtful," the Seventh Circuit wrote, "that a prison warden would be directly involved in the day-to-day operation

of the prison hospital such that he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment." *Id.*

In their complaint, plaintiffs allege that their personal property was confiscated pursuant to Warden's Bulletin #2012-51 (regarding the typewriter) and Warden's Bulletin #2012-54 (regarding the fans). R. 1 ¶¶ 13, 15, 18. These bulletins were signed by Warden Hardy. *Id.*, Exh. 2, Exh. 3. The only allegation against Director Godinez, however, is that he "is responsible for the day-to-day operations of the Department." *Id.* ¶ 19. As in *Duncan*, this suggests a distance from the allegations of the complaint that is too great to permit a finding of "personal responsibility." Plaintiffs make the kind of allegation that does not permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

In their response to Director Godinez's motion to dismiss, plaintiffs further assert that Director Godinez "approved this change in policy, and implemented it by directing prison officials to confiscate all additional fans." R. 30 at 3. To be sure, it is proper for plaintiffs to "elaborate on [their] factual allegations [in opposing a motion to dismiss,] so long as the new elaborations are not inconsistent with the pleadings." *Geinosky*, 675 F.3d at 745 n.1. Indeed, in *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992), the Seventh Circuit explained that "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there

is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment." However, the new facts that plaintiff assert in responding to the motion to dismiss appear to be inconsistent with the facts alleged in the complaint. As already mentioned, the Warden's Bulletins were signed and issued by Warden Hardy – not Director Godinez. Moreover there are no specific allegations that Director Godinez conferred with Warden Hardy or expressly approved of any decisions, aside from mere speculation. For these reasons, after careful review of plaintiffs' complaint, the Court finds that plaintiffs have failed to plead facts to sufficiently demonstrate that Director Godinez can be sued in his individual capacity.

**B.    Official Capacity**

Director Godinez next argues that he cannot be sued in his official capacity because the Eleventh Amendment bars claims for money damages against state officials in their official capacity, as opposed to in their individual capacity. The Court agrees with this argument, to the extent that plaintiffs ask for money damages. However, plaintiffs may still pursue declaratory or injunctive relief.

Under the Eleventh Amendment, states enjoy immunity from suits brought in federal court by their own citizens. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). Even where a state is not a named party to the action, the suit may nonetheless be barred by the Eleventh Amendment. *See Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945). The Supreme Court has explained that "[w]hen the action is in essence one for the recovery of money from

the state, the state is the real, substantive party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* Consequently, Eleventh Amendment protection extends to state officials acting in their official capacity, because any money damages that the plaintiff obtained would be paid out of the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

However, the Supreme Court has recognized an exception where the plaintiff seeks injunctive relief from a state official. *Id.* at 677. Although courts cannot make the state official use state funds to make reparations for the past, courts *can* tell a state official to comply with federal standards in the future. *Id.* at 664-65. A federal court's remedial power, therefore, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury. *Id.* at 677.

As a state official, Director Godinez cannot be sued for money damages. Plaintiffs concede, as they must, that any such damages would necessarily come from the state treasury, which is protected from private suit by the Eleventh Amendment. However, plaintiffs in this case also seek other types of redress, including declaratory relief and return of their confiscated property. Such relief may be properly awarded by a federal court, and therefore plaintiffs' suit could proceed to the extent that they sued Director Godinez in his official capacity and sought prospective declaratory or injunctive relief. However, for the reasons explained

below, no proper claim has been brought with respect to plaintiffs' substantive claims.

## II.     Failure to State a Claim

### A.     Takings Clause (Count I)

Plaintiffs allege that the confiscation of their typewriter and fans violated the Takings Clause of the Fifth Amendment because these items were removed from their cells without the provision of just compensation. Director Godinez maintains that plaintiffs have failed to state a claim for relief. In support of his motion to dismiss, Director Godinez sets forth two arguments: (1) plaintiffs did not have a property interest in the items that were removed from their cells; and (2) the actions of the prison officials did not constitute a taking.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The aim of the Takings Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Therefore, "the Takings Clause bars the state from taking private property without paying for it, no matter which branch is the instrument of the taking." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 130 S. Ct. 2592, 2602 (2010).

Director Godinez's first argument, that plaintiffs did not have a property interest in their personal items, is without merit. Director Godinez cites several cases for the proposition that prisoners have no constitutional right to a typewriter.

R. 12 at 5-6 (citing *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *Sands v. Lewis*, 886 F.2d 1166, 1172 (9th Cir. 1989)). According to Director Godinez, it follows that Sorrentino had no property interest whatsoever in the typewriter that he purchased from the prison commissary. *Id.* at 5. The Court is not willing to draw that conclusion.

On the contrary, the Seventh Circuit has recognized that inmates *do* have the right to possess property, while those rights are subject to limitations. *See Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (finding a property interest in photocopies of cases printed from the prison's law library); *Secret v. Brierton*, 584 F.2d 823, 825 (7th Cir 1978) (finding a property interest in AM/FM radio/cassette recorder, accompanying adapter plug and AC power cord, and stereo headphones). In *Nance*, the court recognized that while the plaintiff did not have a property interest in visiting the prison commissary to purchase new items, the plaintiff did have a property interest in personal items that he already possessed. 147 F.3d at 590. Moreover, in the context of a Fourth Amendment challenge, the Supreme Court has held that "prison attendants can[not] ride roughshod over inmates' property rights with impunity." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

In this case, plaintiffs purchased a typewriter and two fans from the prison commissary. They used their own money to buy these items, $266.16 for the typewriter and $26 for each fan, and then transported them to their cells. Plaintiffs thus acquired a property interest in these items that is subject to the strictures of the Fifth Amendment.

Director Godinez next argues that the removal of these items from plaintiffs' cells did not constitute a taking because there was no deprivation of property, and it is here that the Court agrees. Lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among the rights obviously subject to curtailment is an inmate's right to possess property. *Ford v. Schmidt*, 577 F.2d 408, 410 (7th Cir. 1977). As the Seventh Circuit noted in *Secret*, 584 F.2d at 830, "[t]here is no constitutional right that prohibits prison officials from confiscating most of a prisoner's personal property pending release from prison. The constitutional violation arises only if they confiscate that property without due process of law."

A prisoner receives adequate process when an adequate post-deprivation remedy is available to redress confiscations of property. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999). The Seventh Circuit has explained that the post-deprivation remedy must be "meaningless or nonexistent" in order to be inadequate. *Easter House v. Felder*, 910 F.3d 1387, 1406 (7th Cir. 1990). In their complaint, plaintiffs did not allege that there was no post-deprivation remedy available to them, or even that they attempted to make any formalized grievance with prison officials.

Additionally, placing reasonable restrictions upon the quantity and type of property that an inmate may possess does not violate due process. *Bell v. Wolfish*, 441 U.S. 520, 554-55 (1979); *see also Williams v. Bierman*, 46 F.3d 1134, 1134 (7th Cir. 1995) ("It is without doubt that prisons may place reasonable restrictions on

the quantity and type of property that an inmate may possess without violating due process."); *Campbell v. Miller*, 787 F.2d 217, 227-28 (7th Cir. 1986) ("The security status of a prisoner may justify reasonable steps restricting his direct access to legal materials."). As the Supreme Court explained in *Stop the Beach Renourishment, Inc.*, 130 S. Ct. at 2602, "a legislative, executive, or judicial restriction of property use may or may not be [a taking], depending on its nature and extent." Because plaintiffs were given reasonable options to store or dispose of their fans and typewriter, no deprivation under the Takings Clause has occurred. *See, e.g.*, *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("Although plaintiff no longer has possession of the property, he still retains control over it and, therefore has not been 'deprived' of the property."); *Pryor-El v. Kelly*, 892 F. Supp. 261, 271 (D.D.C. 1995) ("Where an inmate's personal property is seized and sent to an address of his choosing, such action is not a deprivation."); *Stringer v. DeRobertis*, 541 F. Supp. 605, 606 (N.D. Ill. 1982) (prisoners who ordered $900 worth of printed materials with alleged consent of prison officials but who subsequently were not allowed to take possession of the materials suffered no "deprivation" where officials offered to relinquish possession to someone designated by the prisoners).

As Director Godinez points out, Sorrentino was given several options regarding the disposition of his typewriter. Pursuant to Warden's Bulletin #2012-51, Sorrentino could elect to (1) give the typewriter to a visitor; (2) mail it to another person at the prison's expense; (3) donate it to the law library; (4) destroy it; or (5) store it in his personal property. R. 1, Exh. 3. Sorrentino chose to donate his

typewriter to the law library for other prisoners to use. R. 30 at 4. While this decision certainly limited his access to the typewriter, it did not constitute a taking, because Sorrentino voluntarily made this choice among many reasonable options. Especially in light of the offered option of storing the typewriter in his personal property, the Court finds that no taking occurred.

Plaintiffs' claim regarding their fans fares no better. Although the "extra" fans were taken from their cells,[3] Warden's Bulletin #2012-54 provided that "[a]ll fans collected that are in appropriate conditions, with no alterations[,] will be transported to and stored in offender personal property." R. 1, Exh. 2. This did not constitute a taking under the meaning of the Fifth Amendment, which requires "a transfer of property *to the State or to another private party*." *Stop the Beach Renourishment, Inc.*, 130 S. Ct. at 2601 (emphasis added). Plaintiffs' fans were stored in their own *personal property*, and thus no taking occurred.

Plaintiffs contend that Sorrentino was entitled to possess a typewriter based on 20 Ill. Admin. Code § 525.140(k), which states that prisoners "may receive typewriters ordered directly from a supplier through the commissary." However, as Director Godinez points out, this section confers no right to own a typewriter. It merely states that the only way that inmates may receive typewriters is from a supplier through the commissary. Moreover, several courts in this district have held that prisoners are not entitled to a typewriter. *See, e.g.*, *Bullock v. McGinnis*, No. 91 C 1353, 1992 WL 13001, at *2 (N.D. Ill. Jan. 24, 1992) (prisoner had no legitimate

---

[3] Each inmate could still have one fan in their cell, for a total of two fans in each cell.

claim to electric typewriter); *Woods v. Maxwell*, No. 84 C 9118, 1989 WL 76135, at *5 (N.D. Ill. July 3, 1989) (prisoner was not deprived of any protected property interest in the possession or use of a new typewriter where prison officials advised him that such property was unauthorized, a family member retrieved the typewriter on his behalf, and he suffered no cognizable economic loss).

Finally, plaintiffs maintain that even though the fans that were taken from their cells were stored in their personal property, the action effectively constituted a taking because they are both serving life sentences and have no direct access to their storage. However, the Fifth Amendment does not compel just compensation in this case, where their property was not effectively transferred to the state or another private party. Instead, this was a restriction that was placed on plaintiffs' property, and given that each prisoner was still allowed one fan, for a total of two fans in each cell, the restriction appears to be reasonable.

For these reasons, after assuming the truth of the allegations of the complaint and drawing all reasonable inferences in plaintiffs' favor, the Court grants Director Godinez's motion to dismiss Count I with prejudice.

**B. Contracts Clause (Count II)**

Plaintiffs allege that the confiscation of their typewriter and fans violated the Contracts Clause of the United States Constitution because the state impaired a contract that permitted plaintiffs to keep these items in their cells at all times. They attach a document titled "Personal Property Contract" to their complaint, alleging that this is the contract that was impaired. Director Godinez contends that

plaintiffs have failed to state a claim for relief, arguing that no contractual impairment occurred because plaintiffs had remedies available for the decision to remove these items from their cells.

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. However, this language does not impose "the [d]raconian provision that its words might seem to imply." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978). As the Supreme Court has recognized, "literalism in the construction of the [C]ontracts [C]lause . . . would make it destructive of the public interest by depriving the State of its prerogative of self-protection." *W. B. Worthen Co. v. Thomas*, 292 U.S. 426, 433 (1934). Still, the Contracts Clause is not without meaning, and in order to state a claim for relief, the plaintiff must allege that he "has a contract with the state, which the state, through its legislative authority, has attempted to impair." *E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page County, Ill.*, 613 F.2d 675, 678 (7th Cir. 1980) (citing *City Ry. Co. v. Citizens' Street R.R. Co.*, 166 U.S. 557, 563 (1897)).

Based on the allegations of the complaint and the accompanying attachments, the Court finds that plaintiffs did not enter into a contract with the state when they purchased their fans from the prison commissary. In determining whether a contract exists for purposes of the Contracts Clause, courts generally look to the law of the state where the alleged contract was formed. *See Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 869-70 (N.D. Ill. 2000). Under Illinois law, a contract is "an agreement between competent parties, upon consideration

sufficient in law, to do or not to do a particular thing," *La Salle Nat'l Bank v. Vega*, 167 Ill. App. 3d 154, 159 (2d Dist. 1988), the formation of which requires an offer, acceptance, and consideration, *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 528 (7th Cir. 2003). The test for an offer is "whether it induces a reasonable belief in the [offeree] that he can, by accepting, bind the [offeror]." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012). This inquiry requires looking at "objective evidence" of the offeror's intent. *Cohen Dev. Co. v. JMJ Props., Inc.*, 317 F.3d 729, 735 (7th Cir. 2003).

In this case, the complaint and its attachments reveal no facts which, taken as true, demonstrate that prison officials were bound by a contract to do anything with respect to the fans. The document attached to the complaint, misleadingly titled "Personal Property Contract," simply contains an inventory of personal items that plaintiffs kept in their cells, including the fans at issue. *See* R. 1, Exh. 4, Exh. 5. By signing the bottom of the document, plaintiffs agreed "to observe and follow all Illinois Department of Corrections rules and Stateville Correctional Center institutional policies concerning the use, ownership, possession and transfer of the items." *Id.* Plaintiffs further agreed that if they used the items inappropriately, the items would be "confiscated, classified as contraband[,] and disposed of." *Id.* However, there is nothing in the language of the document that prohibits prison officials from confiscating the items *for other reasons*. The document simply sets forth what would happen if the inventory items were used inappropriately.

There was simply no "contract" where the prison committed itself, on pain of breach of that contract, to allow prisoners to have certain items in their cell. Common sense would make clear that making such a contract with a prisoner would be foolhardy and even dangerous in a prison setting. There is nothing on the face of the document that binds prison officials in the way that plaintiffs suggest, i.e., unfettered use of the items so long as they followed the rules, and no reasonable reading of the document provides otherwise.

Additionally, there are no facts alleged in the complaint that demonstrate the existence of sufficient consideration, again negating the existence of a contract. Consideration requires a bargained-for exchange, i.e., a reciprocal obligation on the part of both parties. *Voelker*, 353 F.3d at 528. However, the documents that plaintiffs signed refers to several other items of personal property, and thus it is reasonable for the Court to infer that plaintiffs signed the document at some point *after* they purchased their fans. *See Johnson v. Johnson*, 244 Ill. App. 3d 518, 528 (1st Dist. 1993) ("[I]f the alleged consideration for a promise has been conferred prior to the promise upon which [the] alleged agreement is based, there is no valid contract."). Moreover, the plain language of the document imposes no obligations on prison officials, which demonstrates that there was no bargained-for exchange between the parties; instead, plaintiffs were merely promising to follow prison rules and policies regarding their use of the fans.

Plaintiffs argue that the document must have been a contract by virtue of its title: "Personal Property Contract." While they correctly note the document's label,

which may lead to some initial confusion, it is well-settled that "the legal effect of an instrument is not determined by its label." *Harris v. Am. Gen. Fin. Corp.*, 54 Ill. App. 3d 835, 839 (3d Dist. 1977); *see also BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011) ("[W]hen a document says it isn't a contract, it isn't a contract."). In this case, the language in the body of the documents expressly states they are "permit[s]." Moreover, noticeably absent from these documents is any obligation on the part of Director Godinez or the prison to do anything. The documents are nothing more than an inventory sheets that impose some restrictions on the prisoners who signs them. For these reasons, the Court finds that no contract existed between plaintiffs and the prison, and therefore there was no violation of the Contracts Clause.

Even if the document did constitute a contract, however, the Court finds that there was no impairment by the state. The distinction between a constitutional "impairment" and a contractual "breach" is crucial to this determination, and the difference between the two depends on whether the non-breaching party has an available remedy. If a state exercises legislative power in a way that eliminates the availability of a remedy or action for damages by the non-breaching party, the state has *impaired* the contract. *Horowitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250-51 (7th Cir. 1996). On the other hand, if a legislative action announces the state's mere refusal to perform its contractual obligation, the state has simply *breached* the contract. *Id.* The Seventh Circuit itself has "rejected the notion that a breach of contract alone is enough to constitute a constitutional impairment of a

contractual obligation." *Council 31 of the Am. Fed'n of State, Cnty., and Mun. Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 885 (7th Cir. 2012).

In this case, Director Godinez did not impair any contract with plaintiffs. The Court reiterates that there was no contract between Director Godinez and plaintiffs to begin with. However, even if there was a contract that had been breached by removing the typewriter and fans from plaintiffs' cells, plaintiffs still had remedies available to them with regard to this property. One such remedy would have been to file a case in the Illinois Court of Claims, which has jurisdiction over "[a]ll claims against the State founded upon any contract entered into with the State of Illinois."[4] 705 ILCS 505/8(a). As a result, there was no impairment of any contract under the meaning of the Contracts Clause.

For these reasons, after assuming the truth of the allegations of the complaint and drawing all reasonable inferences in plaintiffs' favor, the Court grants Director Godinez's motion to dismiss Count II with prejudice.

### C. Breach of Contract (Count III)

In their response to Director Godinez's motion to dismiss, plaintiffs voluntarily withdrew their state law breach of contract claim, recognizing that damages are barred by the Eleventh Amendment. R. 30 at 4 n.3. Moreover, as the Court explained in the previous section, the facts alleged in the complaint

---

[4] The Illinois Court of Claims has previously awarded damages to prisoners for claims involving confiscated property. For example, in *Olson v. State*, 46 Ill. Ct. Cl. 277, 279-80 (1994), several articles of clothing were confiscated from a prisoner's cell and destroyed. The prisoner introduced credible evidence of the value of the clothing and of the fact that he lawfully acquired and possessed some articles of like clothing. The court awarded the prisoner $147.48 in satisfaction of his claim.

demonstrate that no contract existed between plaintiffs and the prison, and therefore plaintiffs have failed to state a claim for relief. Finally, even if Count III were to state a claim, the Court would be unable to exercise its supplemental jurisdiction over a single remaining state law claim. Count III is therefore dismissed with prejudice.

**Conclusion**

For the foregoing reasons, Director Godinez's motion to dismiss the complaint is granted, and Counts I, II, and III are dismissed with prejudice.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: October 3, 2013